UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAMELA CONLEY,

    Plaintiff,

-vs-                                            CASE NO.:

VISALUS, INC.,

    Defendant.
_____/

## COMPLAINT

Plaintiff, PAMELA CONLEY, by and through her undersigned counsel, sues the Defendant, VISALUS, INC. ("VISALUS"), and in support thereof respectfully alleges the following:

1. Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

## INTRODUCTION

2. The TCPA was enacted to prevent companies like VISALUS from invading American citizen's privacy and prevent abusive "robo-calls" and robo-texts.

3. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

4. Text messages are "calls" within the context of the TCPA. *Satterfield* v. *Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009).

5.      Unlike more conventional advertisements, SMS (Short Message Service) calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

6.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

7.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

8.      This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

9.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by 28 U.S.C. § 1332, diversity jurisdiction.

10. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii).  See *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

11. Venue is proper in this District because the Plaintiff resides in this District (Northern District of Georgia), the robo-texts were received in this District, and the Defendant transacts business in this District.

### FACTUAL ALLEGATIONS

12. Plaintiff is a natural person, and citizen of the State of Georgia, residing in Cobb County, Georgia, and resides in this District.

13. Defendant is Nevada Corporation with a principal place of business and/or office for transacting its business located at 340 E. Big Beaver Road, Suite 400, Troy, Michigan 48083. Defendant regularly conducts business in the State of Georgia.

14. The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, by the Defendant sending illegal text messages (robo-texts) to Plaintiff while she resided in the State of Georgia.

15. At all times material, Plaintiff's cellular telephone number is and was 678-***-9811.

16. Prior to May 9, 2015, Plaintiff had an account with Defendant.

17. On or about May 9, 2015, Plaintiff cancelled her account with Defendant.

18. After May 9, 2015, Defendant began bombarding Plaintiff's cellular telephone number with unwanted text messages. Despite responding "Stop," the robo-texts continued.

19. On or about May 20, 2015, Plaintiff told Defendant to stop sending her text messages. However, the robo-texts continued.

20. On or about June 12, 2015, Plaintiff again asked Defendant to stop sending her text messages. However, the robo-texts continued.

21. On or about September 8, 2015, Plaintiff asked Defendant for the third time to stop sending her text messages. However, the text messages continued.

22. On or about September 23, 2015, Defendant sent Plaintiff an email admitting that the text messages should have stopped on May 9, 2015 and promised that no more text messages would be sent. See Exhibit "A," attached hereto. However, the robo-texts continued up to and including October 6, 2015.

23. Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by sending unwanted text messages to Plaintiff's cellular telephone number numerous times from approximately May 20, 2015 through October 6, 2015, with such frequency as can reasonably be expected to harass.

24. Upon information and belief, some or all of the texts the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

25. The Defendant has a corporate policy to use an automatic system and to send robo-texts just as they did to Plaintiff's cellular telephone in this case, with no way for the texted party and recipient of the texts, or the Defendant, to stop the text messages.

26. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of robo-texts, well-beyond May 20, 2015, when Plaintiff first advised Defendant to stop texting Plaintiff.

27. Each of the robo-text calls the Defendant made to Plaintiff's cellular telephone number after May 20, 2015 was done so after she had revoked consent and/or without the "express consent" of the Plaintiff.

28. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number, (678) ***-1894, and was the called party and recipient of Defendant's autodialer robo-texts.

29. Due to the tremendous volume of texts, Plaintiff was not able to keep track of each one, however, a partial list of the dates that Plaintiff received text messages from Defendant is attached hereto as Exhibit "B." Plaintiff received at least 63 text messages from Defendant between May 20, 2015 and October 6, 2015.

30. Defendant has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of all robo-texts sent to Plaintiff.

31. The Defendant has a corporate policy to use an automatic system to send robo-texts just as they did to Plaintiff's cellular telephone in this case, with no way for the texted party and recipient of the texts, or the Defendant, to stop the text messages.

32. Defendant's corporate policy provided no means for the Plaintiff to have her cellular number removed from the text message list, or otherwise permit the cessation of and/or suppression of text messages to Plaintiff.

33. Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their robo-texts in a manner which makes it virtually impossible for the robo-texts to stop.

34. Defendant knowingly employed methods that did not permit the cessation of or suppression of robo-texts to Plaintiff's cellular telephone.

35. The constant unsolicited text messages from Defendant to Plaintiff, even after Defendant was told to cease sending them, indicates that Defendant either knowingly and/or willfully violated the TCPA.

## COUNT I
### (Violation of the TCPA)

36. Plaintiff re-alleges and incorporates Paragraphs one (1) through thirty-five (35) above as if fully stated herein.

37. None of Defendant's robo-texts placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

38. Defendant violated the TCPA, with respect to all of its robo-texts calls made to Plaintiff's cellular telephone number after Plaintiff revoked consent to be contacted and without Plaintiff's express consent.

39. The Defendant willfully and/or knowingly violated the TCPA, especially for each of the robo-texts made to Plaintiff's cellular telephone after Plaintiff notified Defendant on or about May 20, 2015, when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact her.

40. Defendant repeatedly placed non-emergency robo-texts to Plaintiff's cellular telephone using an automatic telephone dialing system in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, VISALUS, INC., for statutory damages, punitive damages, actual

damages, treble damages, interest, enjoinder from further violations of these parts, and any other such relief the court may deem just and proper.

                                                        Respectfully submitted,

                                                        */s/ Octavio Gomez*
Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 222-4725
Georgia Bar #: 617963
Attorney for Plaintiff
TGomez@ForThePeople.com